[Crim. No. 4479.   In Bank.   May 20, 1943.]

In re ANGELO BASUINO, on Habeas Corpus.

Angelo Basuino in pro. per., for Petitioner.

Robert W. Kenny, Attorney General, David K. Lener, Deputy Attorney General, Matthew Brady, District Attorney (San Francisco), and Joseph A. Garry, Assistant District Attorney, for Respondent.

SCHAUER, J.—Petitioner seeks his release from the Folsom State Prison upon the ground that his detention there is now illegal in that he has served (counting good conduct credits earned) the maximum (for a first offender) term for which he was sentenced. The warden of the prison resists the application, and in the course of our consideration of the matter it has been suggested that the entire record of the case, or at least of the proceedings at the time of judgment, may be examined in determining the precise offense for which a defendant is sentenced; that the record in each of the cases here involved discloses that the petitioner was duly charged with the crime of violation of the State Narcotic Act *with prior conviction of a felony;* that the petitioner in each case both admitted the prior conviction of felony and pleaded guilty to the substantive offense as charged, thereby establishing irrefragably his liability to sentence for the offense as aggravated (for term of imprisonment) by the prior conviction; and that the judgment, construed in the light of

the record, carries a maximum sentence of ten years, which period has not yet expired. We conclude that, for the reasons indicated above and hereinafter developed more fully, the writ must be discharged.

The law which petitioner was adjudged guilty of violating (State Narcotic Act) provides that (sec. 6, Stats. 1929, p. 385, as amended by sec. 5b, Stats. 1935, p. 2203, at p. 2207): "Any person convicted under this act for transporting . . . any of the drugs . . . mentioned in section 1 of this act, shall upon conviction be punished by imprisonment in the county jail or in the State prison for not less than six months nor more than six years; *provided, however,* that any such person convicted under this act for transporting . . . any of the drugs . . . mentioned in section 1 of this act, shall be imprisoned in the State prison for *not less than one year nor more than ten years if such person has also been previously convicted of a felony . . . and such previous conviction of a felony is charged in the* indictment or *information and* is found to be true by the jury, upon a jury trial, or is found to be true by the court, upon a court trial, or *is admitted by the defendant.*" (Italics added.)

The return to the writ does not include copies of the informations or indictments but does contain copies of four documents, identical in every detail except as to the numbers they bear and refer to, each of which documents appears to set forth the designation of the form number, the title of the trial court, the department number, the date, the name of the trial judge, the title of the cause, its number, the clerk's minutes of the proceedings on the arraignment for judgment, the judgment, and the clerk's minutes as to the commitment. According to the recitals in the clerk's minutes so portrayed, it appears that the petitioner (defendant in each of such proceedings) was present in court and "was duly *informed by the Court* of the Information duly presented and filed against him on the 1st day of February, 1938, . . . charging said Defendant with the crime of Felony, to wit: *Violating the State Narcotic Act; and one prior conviction of a Felony;* of his arraignment and plea of Not Guilty, on February 8th, 1938; of his admission of having suffered a prior conviction of a Felony; of the Order of Court, on February 25th, 1938, permitting the withdrawal of his former

plea of Not Guilty, and of the substitution of his plea of Guilty.'' (Italics added.) Further, according to the minutes so presented,''The Defendant . . . was then asked if he had any legal cause to show why judgment should not be pronounced against him; to which Defendant replied that he had none.''

The foregoing recitals evidence an arraignment obviously sufficient to warrant the pronouncement of a judgment carrying the ten-year maximum; i.e., for *violation of the State Narcotic Act with one prior conviction of a felony,* but the judgment itself as actually pronounced was silent as to the prior conviction of felony. According to the record it reads: ''And no sufficient cause being shown or appearing to the Court, thereupon the Court renders its Judgment: That whereas, the said Defendant Angelo Basuino having been duly convicted in this Court of the crime of Felony, to wit: *Violating the State Narcotic Act,* It is therefore ordered, adjudged and decreed that the said Defendant Angelo Basuino be punished by imprisonment in the State Prison of the State of California; *said sentence to run concurrently with sentence imposed in''* (italics added) the other three causes. Obviously the court could and *should* have sentenced the petitioner for the longer maximum term; i.e., for violating the State Narcotic Act *with prior conviction of a felony,* but equally apparent is the fact that the judgment itself, if we cannot look to the remainder of the record to interpret it, refers only to the unaggravated crime of ''Violating the State Narcotic Act'' and hence would carry a maximum penalty of six years' imprisonment.

The question to be determined is, may the Board of Prison Terms and Paroles (and this court) properly consider the accompanying record as supplementing the language of the judgment, and, in the light of such record, construe it as imposing the sentence which the law ordained? We are of the opinion that the judgment must be so viewed.

The historical statement of facts included in an arraignment for judgment is by statute made mandatory on the court as a preliminary to pronouncing judgment (Pen. Code, sec. 1200; *People* v. *Walker* (1901), 132 Cal. 137, 140 [64 P. 133]; cf. *People* v. *Swift* (1934), 140 Cal.App. 7, 9 [34 P.2d 1041]; *People* v. *Wademan* (1918), 38 Cal.App. 116, 137 [175 P. 791]). Such preliminary statement has been said to constitute no part of the judgment itself *(People* v. *Murback* (1883), 64 Cal. 369, 372 [30 P. 608]; *In re Ring* (1865), 28 Cal. 247, 252-253), but even though technically

it is not a part of the judgment, the judgment is only a part of the proceeding in and by which the respective rights of the State and the defendant are determined. In the case of *Hambrick* v. *State* (1920), 80 Fla. 672 [86 So. 623, 14 A.L.R. 987, at page 989], the Supreme Court of Florida said: "The entire record may be looked to in ascertaining the offense for which the accused is sentenced, and an erroneous recital or statement of the offense by the court in pronouncing sentence, or of the clerk in recording in the minutes of the proceedings kept by him the judgment imposed, will not vitiate the judgment when the record fully discloses the offense for which the accused was indicted, tried and convicted. In such case the record furnishes a complete protection against another prosecution for the same offense."

Section 1207 of the Penal Code, as it read at the time the judgments were rendered against petitioner (February 28, 1938) provided that "When judgment upon a conviction is rendered, the clerk must enter the same in the minutes, stating briefly *the offense for which the conviction was had,* and the fact of a prior conviction, if any, and must, within five days, annex together and file the following papers, which constitute a record of the action:

"1. The indictment or information, and a copy of the minutes of the plea or demurrer or the case as certified to the superior court, and all rulings thereon.

"2. A copy of the judgment." (Italics added.)

In the case of *In re Ring* (1865), *supra,* 28 Cal. 247, 250, the court had before it a somewhat similar problem. The judgment was attacked, on a habeas corpus proceeding, on the ground "that it does not state 'the offense for which the conviction has been had,' as required by section four hundred and sixty-two, Criminal Practice Act." The court said (28 Cal. at p. 252): "The four hundred and sixty-second section of the Criminal Practice Act requires the Clerk to enter every judgment rendered upon a conviction in the minutes, 'stating briefly the offense for which the conviction has been had,' and within five days thereafter annex together and file certain specified papers, 'which shall constitute the record of the action.' . . . That the several papers specified . . . enter into and become a part of the record must not be lost sight of when we come to determine what it is essential that the judgment itself should contain, for where several papers are thus united in chronological order, and made one in legal intent,

it cannot be claimed that the contents of one should be repeated in another. If they all, taken together, furnish facts sufficient to protect the defendant against another prosecution for the same offense, it cannot with any show of reason be claimed that the record is defective in any matter of substance. From the mere fact that these several papers are taken into and made a part of the record, it is clear that each one was intended merely to tell its own story—or rather, to relate its particular branch of the whole history. Thus the indictment states the jurisdictional facts, the nature of the offense and the facts and circumstances, so far as they are material. The other papers give the history of the trial, including the verdict; and *the judgment,* which constitutes the last chapter, *merely finishes the account by stating* [1] *of what offense the defendant was finally convicted, and* [2] *the penalty imposed by the Court.* The judgment need not, and it was not intended that it should, repeat anything contained in the papers which precede it, for in view of the fact that they go into the record and make a part of it, such repetition would be idle and serve no useful purpose.'' (Italics added.)

As to the first of the two functions of the judgment declared in the above quotation, if an information stated more than one offense and the defendant did not plead guilty to all the offenses charged, or if the charge as laid embraced so-called included or lesser offenses and the defendant did not plead guilty to a specific offense, the language of the judgment of conviction might well be all important as the sole means of determining the precise offense of which the defendant was convicted, but in the case before us there was no such uncertainty for the judgment to resolve. The court was not required to adjudicate any fact not in issue. (*People* v. *Rhodes* (1934), 137 Cal.App. 385, 389 [30 P.2d 1026].) The specific charges of the several informations, coupled with the defendant's admission of the prior conviction and pleas of guilty to the substantive offenses, definitely establish ''of what offense the defendant was finally convicted.'' So far as the second of such functions is concerned, the statement of the ''penalty imposed by the court,'' the indeterminate sentence law has eliminated the necessity, in cases of the type here involved, for the judgment to state anything more than that the sentence is imprisonment in a specified state prison for the term prescribed by law. (*In re Carlton* (1921), 53 Cal.App. 225, 227 [200 P. 51]; *People* v. *Ure* (1924), 68 Cal.App. 545, 549 [229 P. 987].) The length of the term actually to be

served, within the limits of the law, is fixed at a later time by the Board of Prison Terms and Paroles. Such board also may even change the place of imprisonment (formerly covered by section 1202a of the Penal Code, now by sections 2009, 2023 and 2033 of the Penal Code). The judgment pronounced in each of the cases did decree "that the said Defendant . . . be punished by imprisonment in the State Prison" and the remanding order specified that he was to be "taken [by the sheriff] to the Warden of the State Prison at Folsom . . ." That the imprisonment be for the term prescribed by law upon the record of the facts was necessarily implied.

The fact that the Folsom prison was named is consistent with the view that the judgment was predicated on the defendant's prior conviction and carried the ten-year maximum, inasmuch as section 1202a of the Penal Code, as it was cast at the date of the sentence (February 28, 1938), provided that "If the judgment is for imprisonment in the State prison the judgment shall direct that the defendant be taken to the warden of the State Prison at San Quentin; *provided, however, that if the defendant shall have previously been convicted of a felony,* or if the court in the exercise of its discretion shall deem it a proper case so to do, it shall direct that the defendant be taken to the warden of the *State Prison at Folsom.*" (Italics added.) No suggestion had been made that there existed any ground for designating the prison at Folsom other than the fact of the prior conviction.

The case of *In re Ring* (1865), *supra,* 28 Cal. 247, has been quoted and followed or cited with approval in numerous cases, including, among others, *Ex parte Williams* (1891), 89 Cal. 421, 426-427 [26 P. 887]; *People* v. *Terrill* (1901), 133 Cal. 120, 123 [65 P. 303]; *LaGrange etc. Co.* v. *Carter* (1904), 142 Cal. 560, 565 [76 P. 241]; *Ex parte Haase* (1907), 5 Cal. App. 541, 545 [90 P. 946] (citing *In re Ring* as *In re Ruiz*); *People* v. *Camp* (1919), 42 Cal.App. 411, 422-423 [183 P. 845]; see, also, *In re Clark* (1941), 42 Cal.App.2d 574, 577 [109 P.2d 407].

Petitioner does not claim that the language used in the judgment, insofar as it may be deemed ambiguous in the light of the record, has actually prejudiced him in any way. Section 1404 of the Penal Code provides that "Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake

therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right." In *People* v. *Wheatley* (1891), 88 Cal. 114 [26 P. 95], this court was confronted with a problem somewhat similar to that here involved. With respect to the attack on the judgment it said (at page 119) : "It is contended that the court had no right to pronounce judgment of imprisonment for eight years, because 'there is not a word said in the judgment about any prior convictions, nor does the verdict say aught concerning the same.' But the judgment recites that when the defendant was called up to be sentenced he was duly informed by the court of the information charging him 'with the crime of burglary and prior conviction of burglary in the first degree; of his arraignment and plea of not guilty as charged in said information, and guilty of said prior conviction; of his trial and the verdict of the jury, on the seventeenth day of October, 1889, guilty of burglary in the second degree. The defendant was then asked if he had any legal cause to show why judgment should not be pronounced against him.' This was sufficient to meet the requirements of sections 1200 and 1207 of the Penal Code; and imprisonment for the term of eight years was authorized."

The law does not favor a construction which would result in holding a judgment void or a formal judicial proceeding meaningless. There was in the cases out of which this application has arisen no area whatsoever for the exercise of judicial discretion in determining the sentence to be imposed.

The proceedings before the trial court established the defendant's guilt of the precise crime as charged in each case; the law fixed the term of the sentence so far as minimum and maximum period of imprisonment was concerned. If the trial judge, upon such records, had undertaken to sentence the defendant to death or to imprisonment in the county jail, such judgment obviously would be void on the face of the record. Less obvious in character, perhaps, but no less unauthorized in law, would be a judgment that the defendant be imprisoned for not more than six years. In the case of *People* v. *Vaile* (1935), 2 Cal.2d 441 [42 P.2d 321], a question was raised as to the meaning of a judgment which had been rendered. This court referred to its decision in *In re Boatwright* (1932), 216 Cal. 677 [15 P.2d 755], and said (at page 445) : "As stated in the foregoing opinion, under the indictment, plea, verdict and commitment, the only term of imprisonment permissible under the law was imprisonment for life

without parole. . . . Under such circumstances the indeterminate sentence provisions of section 1168 of the Penal Code are inapplicable. The law itself has set a sole, definite and unchangeable period of imprisonment; therefore, when the court sentenced the defendant, *it was of necessity for this period.*" (Italics added.) The conclusion of the court in that case is applicable here: upon the record presented, and under the law, the judgment rendered was of necessity for the ten-year maximum.

Petitioner has cited to us the cases of *People* v. *Noland* (1939), 30 Cal.App.2d 386 [86 P:2d 363], and *People* v. *Schneider* (1939), 36 Cal.App.2d 292 [98 P.2d 215]. In those cases it was stated in substance that in pronouncing judgment the trial court "ignored entirely" or was "silent upon" the matter of a prior conviction and hence that the judgments must be construed as imposing sentences for a first offense only.

It does not appear that the District Court of Appeal in either of those cases was dealing with a record similar to that now before us. In the Schneider case the defendant denied the prior convictions charged and the verdict went against him; in the Noland case the prior was admitted. But in neither case does the reporter's transcript or the clerk's transcript show what actually occurred at the arraignment for judgment. As to this part of the proceedings the transcripts are identical in each case. The reporter's "transcript" contains merely a statement of his unauthorized conclusion that "the clerk arraigned the defendant for judgment" and the clerk's transcript adds nothing more pertinent than the declaration that the defendant "was duly arraigned for judgment." No copy of minutes showing entries in compliance with the provisions of section 1207 of the Penal Code appears. Thus it may not be said that such decisions (*People* v. *Schneider, supra; People* v. *Noland, supra*) actually conflict with the conclusions we have expressed; the drawing of implications from the language there used, contrary to our conclusions, as the petitioner here has sought to do, is disapproved.

Since the argument on the application herein the petitioner has been released on parole to the custody of the State Parole Officer. The writ is discharged, and the petitioner is remanded to the custody of such officer.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Traynor, J., concurred.